

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 17, 1970

Hon. Burton G. Hackney, Commissioner
State Department of Public Welfare
John H. Reagan Building
Austin, Texas 78701

Opinion No. M-753

Re: Authority of the
Welfare Department
to purchase fidelity
bonds and theft, bur-
glary or robbery in-
surance, and related
questions.

Dear Commissioner Hackney:

Your recent letter describes the needs of your De-
partment for protection in the form of fidelity bonds and also
insurance against loss by theft, burglary, or robbery. You are
primarily concerned with protection against loss of food stamps
and cash.

You advise us that for a number of years you have
secured honesty blanket position bond coverage in the base
amount of $2,500 for each and every employee of the Department,
with additional indemnity on certain positions, as authorized
by Article 6003b, Vernon's Civil Statutes. The additional in-
demnity ranges in amount from $7,500 to $22,500, depending upon
the position, and the additional indemnity has been approved when
necessary as required by law.

You have advised us that expansion of the food stamp
program has brought about an increased risk of loss, making it
necessary for the Department to seek a change in the type of
coverage from "Honesty Blanket Position Bond" to a "Faithful
Performance Blanket Position Bond," and to add additional cover-
age for a number of positions.

You have submitted for our opinion the following
questions:

-3667-

"1.   Can the Department legally purchase a Faithful Performance Blanket Position Bond for its employees under the provisions of Article 6003b, Vernon's Texas Civil Statutes, or under any other General Statutes?

"2.   If Question No. 1 is answered affirmatively, can the Department obtain a Faithful Performance Position Bond for some of its employees and at the same time retain the Honesty Blanket Position Bond for other positions?

"3.   If, under the law, two separate bonds cannot be obtained, is it permissible to obtain the coverage by adding a Faithful Performance Rider to the Honesty Blanket Position Bond?  Does the Department, with the approval of the State Auditor, have the legal authority to obtain specific excess indemnity under a Faithful Performance Position Bond?

"4.   Can the Department legally protect itself against loss due to theft, burglary or robbery under the circumstances described above?

"5.   If so, what kind of protection is available and what is the statutory authority?

"6.   In the event there is no law which would give the Department this kind of protection, is there any Constitutional or basic impediment which would prohibit the Legislature from specifically author- izing the Department to obtain this kind of protection?"

To a large extent the answers to some of your questions are determined by the construction placed on certain provisions of Article 6003b, Vernon's Civil Statutes.  We have set out below Sections 3, 4, and 5 of that statute.

"Sec. 3.  For the purpose of this Act the term:

(a) "Bond" means any agreement under which an insurance company becomes obligated as surety to pay, within certain limits, loss caused by the dishonest acts of officers and employees, or to pay for loss caused by failure of officers or employees to faithfully perform the duties of the offices or positions held.

(b) "Agency" means any department, commission, board, institution, court, institution of higher education, or soil conservation district of the State of Texas, but shall not include any other political subdivision of the State.

(c) "Position Schedule Honesty Bond" means any bond covering the honesty of any employee who may occupy and perform the duties of the positions listed in the schedule attached to the bond, each position being covered for a specific amount.

(d) "Honesty Blanket Position Bond" means any bond which covers all positions occupied by officers or employees of an agency for a uniform specified amount applicable to each position.

(e) "Faithful Performance Blanket Position Bond" means any bond which covers all positions in an agency, conditioned that the officers and employees of such agency will faithfully perform the duties of such officers and employees.

(f) "Specific Excess Indemnity" means additional bond coverage of specified positions over and above the coverage specified on a "Position Schedule Honesty Bond" an "Honesty Blanket Position Bond" or a "Faithful Performance Blanket Position Bond."

'Sec. 4.  The head of any agency, except as otherwise provided for in this Act, is hereby authorized to enter into bonding agreements with an insurance company authorized to do business in the State of Texas for any of the following types of bonds, but no agency or head of any agency shall enter into agreements where by more than one type of bond is applicable to officers or employees of the agency:

(a) A Position Schedule Honesty Bond may be used when not more than a combined total of ten (10) officers or employees in any particular agency or board are to be bonded.

(b) Blanket Position Bond may be used when three (3) or more officers or employees in a particular agency are to be bonded. Specific excess indemnity may be carried on certain specified positions, provided the total of the blanket bond coverage and the specific excess indemnity for any particular position does not exceed Ten Thousand Dollars ($10,000).

"Sec. 5. (a) Unless otherwise provided for in this Act, the maximum coverage on any State official or State employee shall not exceed the sum of Ten Thousand Dollars ($10,000). The head of each agency, unless otherwise provided for in this Act, shall determine the coverage need of the agency within this limit.

(b) The Comptroller of Public Accounts and the State Treasurer may, in addition to entering into agreements for Position Schedule Honesty Bond or Blanket Position Honesty Bond, are each authorized to enter into agreements for Specific Excess Indemnity Bonds and to enter into agreements for Faithful Performance Blanket Position Bonds.

(c) All bonds for Specific Excess Indemnity in excess of the Ten Thousand Dollars ($10,000) hereinabove specified, shall be entered into only upon the recommendation and approval of the State Auditor, when, in his judgment, such excess coverage is necessary to adequately protect the State."

These sections should be construed in the light of the following statement, found in 53 Texas Jurisprudence 2d, Statutes, Section 125, page 182:

"When the intent is plainly expressed in the language of a statute, it must be given effect without attempting to construe or interpret the law.

> "On the other hand, when it is necessary to construe an act in order to determine its proper meaning, it is settled that the court should first endeavor to ascertain the legislative intent, from a general view of the whole enactment, and the enactment alone. The intent having been ascertained, the court will then seek to construe the statute so as to give effect to the purpose of the Legislature, as to the whole and each material part of the law, even though this may involve a departure from the strict letter of the law as written by the legislature. This is the fundamental canon and the cardinal, primary, and paramount rule of construction, which should always be closely observed and to which all other rules must yield."

### 1.

In reply to your first question, we are of the opinion that under the provisions of Section 4(b) the Department may lawfully purchase a "Faithful Performance Blanket Position Bond" for its employees. We are of the opinion that the Legislature intended by granting authority to purchase a "Blanket Position Bond" to authorize either an "Honesty" bond or a "Faithful Performance" bond, as those bonds are defined in Section 3 of the Act. We think the legislature used "Blanket" to distinguish those bonds from "schedule" type bonds, and intended to authorize either type of blanket bond defined in Section 3.

### 2.

In reply to your second question, we are of the opinion that the Department may lawfully obtain a "Faithful Performance Blanket Position Bond" for some of its employees and at the same time retain the "Honesty Blanket Position Bond" for other positions. We construe the prohibition in Section 4 against an agency's entering into agreements whereby more than one type of bond is applicable to officers or employees of the agency to prohibit an agency's purchasing both a schedule type bond and a blanket type bond, the two distinct types of bonds authorized under Section 4.

3.

The first part of your question number 3 appears to indicate a wish to have the same positions under both honesty and faithful performance bonds. The language of Section 5(b) indicates an intention on the part of the legislature that this should be permitted only for positions in the Comptroller's or Treasurer's departments.

We are of the opinion that the statute does not authorize coverage by both honesty and faithful performance bonds for the same position in your department. It should be noted when making your determination as to which position is to be covered by which bond that the last sentence of Section 6(d) provides that the bond coverage shall cover the particular office or position rather than the person occupying the office or position at the time the agreement is entered into.

The second part of your question number 3 asks whether the Department, with the approval of the State Auditor, has the legal authority to obtain specific excess indemnity under a Faithful Performance Position Bond.

We are of the opinion that, without the approval of the Auditor, the Department has the authority, under Section 4(b) to obtain specific excess indemnity under a Faithful Performance Blanket Position Bond, provided the coverage is for certain specified positions, and provided the basic coverage and the specific excess indemnity do not in the aggregate exceed $10,000.

We are of the opinion that the Department, with the recommendation and approval of the State Auditor, has the authority under Section 5(c) to obtain specific excess indemnity under a Faithful Performance Blanket Position Bond, for certain specified positions, in such amounts as may be recommended and approved by the Auditor.

4.

In reply to your fourth and fifth questions, it is our opinion that the Department of Public Welfare may not lawfully

purchase insurance protection against loss due to theft, burglary, or robbery.

We direct your attention to Senate Concurrent Resolution No. 3, passed by the 37th Legislature, 2nd Called Session, 1921, reading in its relevant part as follows:

"Resolved by the Senate of the State of Texas, the House of Representatives concurring herein, that hereafter it shall be and is the fixed policy of this State and the State shall carry its own insurance upon State buildings and contents, and that no insurance policies shall be taken out upon any of the public buildings and contents, and that no insurance policies shall be taken out upon any of the public buildings of this State, nor upon the contents thereof, and the State Board of Control, and all other boards having charge of buildings of the State, and the contents of such buildings, are hereby instructed not to have such buildings nor property insured, notwithstanding there may be items in the appropriation bills authorizing the expenditures of money for the payment of insurance premiums.

While this resolution does not have the effect of general law, yet it does have the effect of a law upon the particular subject about which the resolution is made, so long as that particular thing or condition exists or until such resolution is otherwise revoked by the Legislature.

See also Attorney General's Opinions No. O-201 (1939), O-184 (1939), O-3000 (1941), O-2045 (1940), and O-1762 (1940).

5.

In reply to your sixth question, we do not know of any Constitutional impediment which would prohibit the Legislature from specifically authorizing the Department to purchase insurance against loss due to theft, burglary, or robbery, particularly if the statute described the type of property to be covered by the policy.

## S U M M A R Y

The Texas State Department of Public Welfare under the provisions of Section 4(b), Article 6003b, V.C.S., may purchase a "Faithful Performance Blanket Position Bond."

The Department may obtain a "Faithful Performance Blanket Position Bond" for some of its employees and at the same time retain the "Honesty Blanket Position Bond" for other positions.

The same positions may not be covered by both an honesty bond and a faithful performance bond.

The Department may, without the approval of the State Auditor, obtain specific excess indemnity under a Faithful Performance Blanket Position Bond, provided the coverage is for certain specified positions and does not with the basic coverage aggregate in excess of $10,000.

The Department, with the recommendation and approval of the State Auditor, may obtain specific excess indemnity under a Faithful Performance Blanket Position Bond for certain specified positions in such amounts as may be recommended and approved by the Auditor.

The Department may not lawfully purchase insurance protection against loss due to theft, burglary, or robbery.

We know of no Constitutional impediment which would prohibit the Legislature from specifically authorizing the Department to purchase insurance against loss due to theft, burglary, or robbery.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James S. Swearingen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
John Banks
Pat Bailey
Rex White
Jack Goodman

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant